UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 11-531 CAS | Date | February 29, 2012 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| CATHERINE JEANG | DEBORAH GACKLE | ROBYN BACON |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| Defendant: | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| | | | | DAVID SUTTON, DFPD | X | X | |
| JOSE LUIS MEDEL | X | X | | CHARLES BROWN, DFPD | X | X | |

**Proceedings:**   DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (filed 12/5/2011)

## I. INTRODUCTION

Defendant Jose Luis Medel ("defendant") is charged in a two count indictment with possessing methamphetamine with intent to distribute in violation of 21 U.S.C. § 841 and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).  See Dkt. No. 1.

On December 5, 2011, defendant filed the instant motion to suppress evidence, contending his Fourth Amendment rights were violated in connection with a police-led search of his house.  The government filed its opposition on December 19, 2011, and defendant filed his reply on January 9, 2012.  The Court held evidentiary hearings on February 28 and 29, 2012.  After carefully considering the arguments set forth by both parties, the Court finds and concludes as follows.

## II. BACKGROUND

On January 14, 2011, victim J.K. reported to the Ventura Police Department ("VPD") a burglary of his Ventura, California home.  Declaration of Robyn K. Bacon ("Bacon Decl.") ¶ 2, Exh. A (Search Warrant).  The burglar stole four items: a Nintendo Wii gaming console, a Wii wireless controller, a Wii nunchuk controller, and a 15-inch Sony laptop computer.  Id. at 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

On January 26, 2011, J.K. contacted VPD to inform them that he had been billed for his Netflix account, which was automatically linked to his Wii.[1]  Id.

VPD detective Chris Wilson contacted Netflix and obtained a list of account activity on J.K.'s account for the time period "after the reported residential burglary when the Nintendo Wii entertainment system was stolen."  Id.  Detective Wilson determined that the Wii's IP address was accessed repeatedly following the burglary, which, upon review of AT&T's records, led him to a residence located at 75 South Linden Drive in Ventura, California ("Linden residence").  Id. at 5.  Law enforcement records showed that the Linden residence was occupied by Nicole Charlene Medel and Jose Juan Medel, defendant's brother.  Id.  Detective Wilson's research revealed that Jose Juan Medel was a member of the Ventura Avenue Gangsters and had been arrested in December 2009 in a fight close to J.K.'s residence.  Id.  Based on all this information, Detective Wilson applied for, and was granted, a state-issued search warrant on April 1, 2011, to search for the four items burglarized from J.K.'s residence.  Id. at 2, 6.  The warrant specifically authorized a search of the Linden residence, including "all rooms, attics, basements, containers, and other parts therein, the surrounding grounds and any garages, storage rooms, trash containers, and outbuildings of any kind located thereon where the listed stolen property could be located."  Id. at 2.

On April 6, 2011, VPD detectives executed the search warrant at the Linden residence.  Id. at 1.  The detectives knocked on the front door and announced their presence twice before defendant's six-year old nephew opened the door.  Declaration of Christopher Wilson ("Wilson Decl.") ¶ 2.  Detectives detained defendant's brother, Jose Juan Medel, in the front room.  Id.  Further into the house, detectives came upon a bedroom accessible by two doors, both of which were locked.  Id. ¶ 3.  After knocking, announcing their presence, and receiving no response, detectives forced open the door.  Id.  Detectives came upon defendant lying in his bed with his girlfriend, Laura Licon, standing nearby.  Id.  After escorting defendant and his girlfriend out of the room, detectives identified the stolen Wii and one Wii controller on the entertainment center.  Declaration of James Beautrow ("Beautrow Decl.") ¶ 3.  Because detectives did not see the second Wii controller or the Sony laptop, they continued their search.  Id.  Detectives began with defendant's bed because it was the largest piece of furniture in the room and could be used

---

[1] Netflix is an internet-based video subscription service whose members can, for a fee, stream video content such as movies or television shows over the internet.  See Opp'n at 3.  The Wii offers a Netflix application through which a user can utilize the service.  Id.  The user must manually install the application and configure the Wii to receive data from Netflix.  Id.  Every time a user's Wii accesses Netflix, the user's internet protocol ("IP") address is automatically generated by the Wii and recorded by Netflix.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

as a staging area for detectives to place any discovered items. Id. ¶ 4. When one detective removed the pillow and blanket from the bed, the search team discovered an unloaded Glock 27 .40 caliber semi-automatic handgun and a clear plastic bag which appeared to contain methamphetamine. Id.[2] Detectives continued searching the bed by lifting the mattress pad and unzipping the mattress cover. Those two areas revealed two digital scales, a white sock wrapped around a Davis Industries P32 handgun, a clear plastic bag containing 190 grams of methamphetamine, and a sock wrapped around a Colt .25 handgun. Id. ¶ 6. Detectives searched the rest of defendant's room and discovered: a clear plastic bag containing what appeared to be methamphetamine in the nightstand drawer; drug payment ledgers and DMV paperwork in defendant's name on top of the nightstand; $900 in cash in varying denominations and an insurance bill on top of the dresser; drug payment ledgers and seven cell phones on top of the entertainment center; two Apple Macbook laptop computers (determined to be stolen by cross-checking the serial numbers) on the floor near the bed; and a .22 caliber rifle in the closet. Id. ¶ 7. Detectives seized all of the items. Id. Detectives did not find the stolen Sony laptop or the second Wii controller in defendant's bedroom. Id. ¶ 8.

Detectives next searched defendant's garage, wherein they discovered a locked gun safe. Wilson Decl. ¶ 5. Initially, defendant and his brother declined to reveal the combination to the safe, but they disclosed it when detectives informed them they had called a tow truck to transport the safe to the police station where it could be forced open. Id. ¶ 6. Inside the safe, detectives found 24 more guns and another clear plastic bag containing a substance which appeared to be, and later confirmed to be, methamphetamine. Id. The search team did not find the Sony laptop or the second Wii controller in the gun safe or anywhere else in the Linden residence. Id. ¶ 7.

After detectives completed their search, they arrested defendant and transported him to the VPD police station for interrogation. Id. ¶ 8. Detective Wilson advised defendant of his Miranda rights which defendant acknowledged he understood and agreed to answer questions. Id. During the interrogation, defendant admitted that the methamphetamine found in his room and the gun safe was his, though he claimed it was only for his personal use. Id. Defendant also admitted ownership of several of the guns found in his room and the safe but not all the guns. Id. Following the execution of the warrant and subsequent interrogation, defendant filed the instant motion to suppress, claiming the warrant lacked probable cause and that the officers exceeded the scope of the warrant during its execution.

---

[2] Laboratory tests confirmed that the bag contained approximately 22.3 grams of methamphetamine. Detectives also learned that the handgun was registered to defendant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**III. DISCUSSION**

Defendant seeks to suppress all evidence found during the search of the Linden residence on the ground that the warrant lacks probable cause.[3] See Mot. at 8–12. Alternatively, defendant argues that detectives exceeded the scope of the warrant during its execution and that all items seized from defendant's mattress and gun safe should be suppressed. Id. at 12–15.

### A. Whether the Search Warrant Lacked Probable Cause

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. An affidavit in support of a search warrant must show that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "Whether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a 'commonsense, practical question,'" for which "[n]either certainty nor a preponderance of the evidence is required." United States v. Kelley, 482 F.3d 1047, 1050 (9th Cir. 2007) (quoting Gates, 462 U.S. at 246). The affidavit must establish "a reasonable nexus between the activities supporting probable cause and the location to be searched." United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir. 1993). "The facts must show that the property to be seized was known to be at the place to be searched so recently as to justify the belief that the property is still there at the time of the issuance of the search warrant." Durham v. United States, 403 F.2d 190, 194 (9th Cir. 1968). A magistrate's determination of probable cause is afforded "great deference" and may not be reversed unless it was clearly erroneous. United States v. Krupa, 658 F.3d 1174, 1177 (9th Cir. 2011).

Defendant argues that the warrant failed to establish probable cause "because it did not establish a nexus between [the Linden residence] and criminal activity." Mot. at 8 (alterations omitted). Defendant bases this contention on one statement from the affidavit in support of the search warrant, where the affiant declares that the victim's Netflix account was accessed "again and again between January 31, 2001 and February 1, 2010." Id. at 9; Bacon Decl. Exh. A at 4. Because the burglary did not occur until January 14, 2011, defendant argues that "the data gathered from the AT&T and Netflix records are irrelevant. . . ." Mot. at 9. Defendant asserts that "whether the affiant actually requested records from Netflix in 2011 is irrelevant" because "all data necessary to show probable cause for the issuance of a search warrant must be

---

[3] The government does not intend to introduce at trial the DMV paperwork, insurance bill, or the seven cell phones discovered in defendant's room. See Opp'n at 3 n.4. Defendant's motion is moot as to those items.

contained within the four corners of a written affidavit given under oath." Id. (quoting United States v. Luong, 470 F.3d 898, 904 (9th Cir. 2006)). According to defendant, the remaining allegations, such as defendant's brother's alleged involvement in gang activity, does not give rise to probable cause. Id. at 10. Finally, defendant asserts that even if the warrant affidavit sufficiently established a nexus between the burglary and the Linden residence, "the evidence should nonetheless be suppressed because the search warrant affidavit relied on stale information" because officers did not seek a warrant until April 1, 2011. Id. at 11.

In opposition, the government argues that "[a] reasonable nexus does not require direct evidence that the items listed as the objects of the search are on the premises to be searched," but rather "a 'magistrate is permitted to make reasonable inferences about where evidence is likely to be kept based on the nature of the evidence and the type of offense.'" Opp'n at 11 (citing United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir. 1933) and quoting United States v. Terry, 911 F.2d 272, 275 (9th Cir. 1990)). The government argues that "it is clear from the context" of the affidavit that the affiant mistakenly identified the time period of Netflix usage. Opp'n at 12. Moreover, the government argues that "an error, even regarding the address to be searched, does not instantly invalidate an otherwise valid search warrant," and that any error regarding the dates of Netflix usage should not invalidate this search warrant under the same reasoning. Id. (citing United States v. Mann, 389 F.3d 869, 877 (9th Cir. 2004)). Finally, the government maintains that staleness should not render the search warrant invalid because "the magistrate could reasonably infer that whoever was using the Wii to watch movies [on Netflix] was likely to continue doing so rather than disposing of the console." Opp'n at 13 (citing United States v. Jacobs, 715 F.2d 1343, 1346 (9th Cir. 1983)).

The Court finds that sufficient probable cause existed to justify issuing the search warrant. Detective Wilson's affidavit in support of the search warrant establishes that: (1) a Nintendo Wii was stolen from the victim's residence; (2) the victim's Netflix account was accessed "after the reported residential burglary"; (3) the Netflix account was accessed from an IP address assigned to the Linden residence; (4) the Linden residence is in close proximity to the victim's house; and (5) Jose Juan Medel, a suspected member of the Ventura Avenue Gangsters, was identified entering and leaving the Linden residence. See Bacon Decl. Exh. A at 4–5. Taking all those facts and observations into account, the issuing judge "reasonabl[y] infer[red]" that evidence from the residential burglary would be found at the Linden residence. Terry, 911 F.2d at 275 (holding that the issuing judge need not determine the evidence is in fact on the premises, but "need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit"). The statement that the Netflix account was accessed "between January 31, 2001 and February 1, 2010" does not render the search warrant invalid. First, the preceding sentences demonstrate that Netflix provided the affiant with "a list of recent account activity" that "showed account activity *after the reported resident[i]al burglary* when the

Nintendo Wii entertainment system was stolen." Bacon Decl. Exh. A at 4 (emphasis added). Second, an error in the probable cause affidavit does not automatically invalidate a search warrant. See United States v. Mann, 389 F.3d 869, 877 (9th Cir. 2004) (upholding validity of search warrant despite misstated address because warrant described location to be searched with "sufficient particularity"). Like Mann, it is clear from the context of the affidavit that, despite the error regarding when the Netflix account was accessed, probable cause existed to issue the warrant.[4] In other words, the issuing judge used "commonsense" under "the totality of the circumstances" to conclude that there was "a fair probability" that the stolen items would be found at the Linden residence. Kelley, 482 F.3d at 1050 (internal quotation marks and citation omitted).

The Court is also unpersuaded by defendant's assertion of staleness. Staleness "must be evaluated in light of the particular facts of the case and the nature of the criminal activity and property sought." United States v. Crews, 502 F.3d 1130, 1140 (9th Cir. 2007). Information offered in support of a search warrant is not stale if "there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises." United States v. Gann, 732 F.2d 714, 722 (9th Cir. 1984). Even a substantial lapse of time is not controlling. United States v. Dozier, 844 F.2d 701, 707 (9th Cir. 1988). Here, the affidavit demonstrates that the victim's Netflix account was accessed "again and again" from the Linden residence following the burglary. Bacon Decl. Exh. A at 4. Given this activity, the issuing judge could reasonably infer that whoever was using the Wii was likely to continue doing so rather than disposing of the console. Cf. United States v. Jacobs, 715 F.2d 1343, 1346 (9th Cir. 1983) (upholding probable cause for search warrant for clothing worn during a robbery that occurred three and a half months prior because "it was reasonable for the magistrate to conclude that such articles of clothing would remain at the residence"). The same rationale applies in this case where the stolen electronics had been accessed "again and again" following the burglary.

Accordingly, the Court finds that the warrant was supported by probable cause.

**B.    Whether Detectives Exceeded the Scope of the Warrant in Executing the Search of the Linden Residence**

Because the Court finds that the warrant was supported by probable cause, it now turns to the question of whether detectives exceeded its scope in executing the search. Defendant argues

---

[4] The Court notes that Netflix did not begin offering streaming content on the Nintendo Wii console until 2010, supporting the conclusion that the error was inadvertent. See https://signup.netflix.com/MediaCenter/Timeline, last accessed January 18, 2012.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

that detectives "went beyond" the scope of the warrant by searching defendant's mattress and gun safe and seizing plastic bags of methamphetamine, guns, drug payment ledgers, and two Apple Macbook laptops. Mot. at 13. According to defendant, "the number of specific items [listed in the search warrant] were found and identified very soon after entry into [defendant's] bedroom," so any subsequent searches turned into a "general exploratory search" and the evidence found must be suppressed. Id. (quoting United States v. Rettig, 589 F.2d 418, 423 (9th Cir. 1979)). Further, defendant contends that "the gaming console, its accessories, and a laptop computer[] are not items that would be expected to be found inside of a mattress." Mot. at 14. Finally, defendant argues that there was no probable cause to enter the gun safe because "[t]he target contraband had been located." Id. at 15.

In opposition, the government contends that "[d]efendant's argument is premised on [the] factual error" that "detectives had found everything" listed in the warrant prior to searching the mattress and gun safe. Opp'n at 18. According to the government, detectives acted "in good faith reliance on a still-open search warrant" when they searched the mattress and gun safe. Id. The government asserts that the unlocated Wii controller and Sony laptop could be stored "in a bed, including under pillows and blankets, under the sheets, in the mattress cover or under the mattress" or could be stored in a gun safe, and that all items seized therein were in plain view. Id. at 19, 21. Finally, the government argues that "[t]he incriminating nature of the evidence [seized] was immediately apparent" and therefore should not be suppressed. Id. at 21 (alterations omitted).

The Court finds that all evidence seized in the mattress, gun safe, and defendant's room is admissible, except for the two Apple laptop computers. First, contrary to defendant's contention, the evidence demonstrates that detectives had not found the Sony laptop or second Wii nunchuk controller prior to searching the mattress or locked safe. See Def. Exhs. B and C at 2 (police reports indicating that detectives recovered Apple laptops but not the Sony laptop listed in the warrant). In fact, detectives *never* found the Sony laptop or second Wii controller. Beautrow Decl. ¶ 8; Wilson Decl. ¶ 7. Because the warrant authorized search of "all rooms, attics, basements, containers, and other parts therein, the surrounding grounds and any garages, storage rooms, trash containers, and outbuildings of any kind located thereon where the listed stolen property could be located," the Court finds that the officers acted within the scope of the still-open warrant in searching beyond the open spaces of defendant's room. See Bacon Decl. ¶ 2, Exh. A at 2.

Moreover, detectives are permitted to search "all items which legitimately might contain the objects specified in the warrant." United States v. Disla, 805 F.2d 1340, 1346 (9th Cir. 1986); see also United States v. Gomez-Soto, 723 F.2d 649, 654 (9th Cir. 1984) ("It is axiomatic that if a warrant sufficiently describes the premises to be searched, this will justify a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

search of the personal effects therein . . . if those effects might contain the items described in the warrant."). Here, detectives were searching for a small, handheld electronic device (similar to a television remote or computer mouse) and a laptop computer approximately 15 inches across and 2 inches thick—either of which could be hidden under blankets, in a mattress pad, under the mattress, or in a locked safe. Although one might not expect to find a laptop or Wii controller in a bed, whether detectives were justified in searching the mattress depends in part "on the extent of the suspects' opportunity for concealment. . . ." Gann, 732 F.2d at 722. Here, detectives knocked on the locked bedroom door, received no response, and had to force the door open, despite the fact that defendant and his girlfriend were inside. Those few moments gave defendant an "opportunity for concealment" of the items. Id. The Court therefore finds it was reasonable for detectives to search the bed for the Wii controller and laptop. Moreover, the lawfulness of the search of the bed extends to detectives' search of the mattress cover and socks, as those containers "legitimately might contain" the Wii controller and laptop. Disla, 805 F.2d at 1346. In Disla, the Ninth Circuit upheld seizure of cocaine and cash that was found in a white plastic bag and brown grocery bag, respectively, under the plain view exception to the warrant requirement because the searching officers "could logically conclude that the 'containers' which held these items (the sock and shopping bag) could contain the items specified in the warrant." Id. Here, detectives could reasonably determine that the Wii controller or laptop had been hidden in the mattress pad or concealed in socks.[5] Similarly, detectives reasonably inferred that a locked safe could contain a stolen laptop. See id. Accordingly, the Court finds that detectives did not exceed the scope of the warrant by searching defendant's bed and gun safe.

Finally, the Court concludes that the incriminating nature of the seized items was readily apparent and therefore admissible under the plain view exception to the warrant requirement. "To fall within the plain view exception, two requirements must be met: the officers must be lawfully searching the area where the evidence is found and the incriminatory nature of the evidence must be immediately apparent." United States v. Stafford, 416 F.3d 1068, 1076 (9th Cir. 2005). Whether the criminal nature of an item is immediately apparent "focuses on whether the officers had 'probable cause to believe they were associated with criminal activity.'" Id. (quoting Horton v. California, 496 U.S. 128, 131 n.1 (1990)). An officer need

---

[5] At the evidentiary hearing, Detective Beautrow testified that, in his opinion, the sock "did not appear" to contain the Wii nunchuk controller. However, his opinion as to the sock's contents does not render the search invalid, as the sock "legitimately might contain" the Wii controller notwithstanding his subjective assessment. Disla, 805 F.2d at 1346. Moreover, and more importantly, the incriminating nature of the sock was readily apparent as set forth in more detail infra.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

not "*know* that the item seized is illegal," but "the facts available" should support a person "of reasonable caution in the belief that certain items may be contraband." Stafford, 416 F.3d at 1076 (emphasis in original); Texas v. Brown, 460 U.S. 730, 741–42 (1980).

Here, officers were "lawfully searching" defendant's home pursuant to the valid search warrant. Stafford, 416 F.3d at 1076. During the search, officers seized several clear plastic bags containing a substance thought to be methamphetamine, several guns, two digital scales, drug payment ledgers, and $900 cash. The incriminating nature of methamphetamine is readily apparent, and defendant does not contend otherwise. E.g. Disla, 805 F.2d at 1346 (holding that incriminating nature of cocaine in plastic bags was "readily apparent"). Moreover, while possession of guns is not inherently criminal, the Ninth Circuit has recognized the incriminating nature of firearms found in close proximity to narcotics. See United States v. Simpson, 10 F.3d 645, 647 (9th Cir. 1993) (upholding seizure of firearms in plain sight as evidence of drug offenses "[b]ecause of the close relationship between drugs and firearms in the narcotics trade"). Once the officers found an exposed firearm, the incriminating nature of a second firearm tightly wrapped by a sock became readily apparent. See Disla, 805 F.2d at 1346. Similarly, a digital scale, standing alone, is not evidence of criminal activity—but finding two scales in close proximity with narcotics and firearms led officers to reasonably conclude that there was a "fair probability" that the scales were evidence of a crime. E.g. United States v. Hudson, 100 F.3d 1409, 1420 (9th Cir. 1996) (upholding seizure of glass containers where officers recognized them as a "type of glassware often associated with methamphetamine manufacture"). Likewise, the incriminating nature of a large amount of cash is "readily apparent" when the cash is found in conjunction with significant quantities of drugs, as was the case here. See Disla, 805 F.2d at 1346. Finally, the drug ledgers are also admissible. Although the ledgers could not have contained the items listed in the warrant, "a police officer may inspect an item found in plain view to determine whether it is evidence of a crime" if he has probable cause "to believe that the discovered item is evidence." United States v. Valles-Valencia, 811 F.2d 1232, 1237 (9th Cir. 1987) (upholding seizure of drug ledgers in plain view after quantities of marijuana had been found); Arizona v. Hicks, 480 U.S. 321, 327 (1987) (establishing "probable cause" as standard for seizures under plain view exception); United States v. Issacs, 708 F.2d 1365, 1370 (9th Cir. 1983) ("[W]hen conditions justify an agent in examining a ledger, notebook, journal, or similar item, he or she may briefly peruse writing contained therein."). The record reflects that detectives had already discovered two bags of methamphetamine and a handgun prior to investigating the drug ledgers. See Reply, Exh. A at 1–2. The presence of the firearm and methamphetamine provided detectives with probable cause to examine the ledgers that were found nearby.

Conversely, the fact that the Apple laptops were stolen is not "readily apparent" by their nature, and none of the items listed in the warrant could have been hidden therein. The Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

therefore finds it appropriate to suppress evidence of the two stolen Apple laptop computers seized during the search.

Accordingly, the Court finds that none of the seized evidence should be suppressed except for the two Apple laptop computers.[6]

## IV. CONCLUSION

In accordance with the foregoing, defendant's motion to suppress is DENIED as to all evidence and statements aside from the two Apple laptop computers.

IT IS SO ORDERED.

|  | 00 | : | 36 |
|---|---|---|---|
| Initials of Deputy Clerk | | | CMJ |

cc:

---

[6] Because the Court finds that none of the evidence should be suppressed aside from the two Apple laptopts, defendant's voluntary statements following his arrest also should not be suppressed.